**Fidel LEAL et ux., Appellants,**

v.

**Narciso CORTEZ et al., Appellees.**

**No. 1617.**

Court of Civil Appeals of Texas, Corpus Christi.

June 30, 1980.

Rehearing Denied Aug. 29, 1980.

Kirk James, Rankin & Kern, McAllen, for appellants.

Tony Martinez, Horacio L. Barrera, Martinez & Barrera, Brownsville, for appellees.

## OPINION

BISSETT, Justice.

Plaintiffs Fidel Leal and Magdalena Leal originally filed this suit in the District Court of Willacy County, wherein they sought title and possession of certain real property, or in the alternative, a declaration that defendants Narciso Cortez and Gloria Cortez and others held said property for their benefit subject to a constructive trust based upon an alleged oral promise to reconvey the subject land to them. At the first trial, the parties reached a settlement, upon which judgment was purportedly rendered by the trial court. On appeal, however, we reversed and remanded the cause for a new trial, *Leal v. Cortez*, 569 S.W.2d 536 (Tex.Civ.App.—Corpus Christi 1978, no writ). At the conclusion of plaintiffs' evidence in the second trial, defendants moved for an instructed verdict, which was granted and judgment was rendered that plaintiffs take nothing. It is from this judgment that plaintiffs now appeal. We affirm.

The basis for plaintiffs' action was an alleged breach of an oral promise by defendants to reconvey the property in question to plaintiffs. The following relevant facts were adduced at trial. Ramon Leal, plaintiffs' son, held title to certain land in Hidalgo County which he farmed, and upon which there was a mortgage. Plaintiffs were personally liable on the note securing the mortgage.

Plaintiffs owned certain property which was located in Willacy County. When plaintiffs' son began to experience problems in paying off his mortgage on his Hidalgo County land, plaintiffs devised the following scheme to insulate their Willacy County property from any claim or involvement by the mortgagee of the Hidalgo County property: 1) they formed a corporation called Fidel Leal Farms, Inc., to which the Willacy County property was deeded. Stock in that corporation was then issued to plaintiffs and certain other members of plaintiffs' family; 2) subsequently, the stock in Fidel Leal Farms was assigned to defendant Narciso Cortez with the understanding that it

would be transferred back to the assignors after the creditor problems relating to the Hidalgo County land had subsided. Narciso Cortez then changed the corporate name of Fidel Leal Farms to Lenarco Farms, which later was dissolved. After Lenarco Farms was dissolved, the land in question (the Willacy County property) was deeded to Narciso Cortez in trust for the benefit of his children. In 1975, Narciso Cortez refused to reconvey the property to plaintiffs. This suit was filed.

The instructed verdict in this case was requested and granted pursuant to the rule that, where parties have transferred land in constructive fraud of creditors, it is the policy of the law to leave the parties in the position in which they placed themselves, and any agreement on the part of the fraudulent grantees to hold the property in trust and to reconvey it will, therefore, not be enforced. *Bramlett v. Jenkins,* 231 S.W.2d 539 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n. r. e.); 26 Tex.Jur.2d, Fraudulent Conveyances § 108 (1961). It is the position of plaintiffs on appeal that this rule is in conflict with the more equitable principle enunciated in *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960) that the doctrine of clean hands is not absolute. They rely on the following statement made in *Omohundro* :

> "The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party." (341 S.W.2d at 410).

Applying that rule to the instant case, it is plaintiffs' contention that an instructed verdict was improper because there is no evidence of injury to defendants; instead, they say that the evidence is conclusive that defendants benefited from plaintiffs' conduct.

■ It is unnecessary for us to address the evidentiary issue of injury to defendants because we hold that the rule relied on by plaintiffs is inapplicable to this case. The major concern of the Supreme Court in *Omohundro* was the scope of the "clean hands" doctrine. Although the "clean hands" doctrine arguably supplies some rationale for the general rule that a court will not enforce a fraudulent grantor's parol rights to a reconveyance from a fraudulent grantee, Annot., 4 A.L.R. 44, 99–100 (1919), it is not the primary reason for the rule. Instead, the primary justification for the rule is that it serves public policy by discouraging fraudulent transactions. *Hughes v. Hughes,* 221 S.W. 970 (Tex.Com.App. 1920, jdgmt approved). Thus, an exception to the "clean hands" doctrine, such as the one enunciated in *Omohundro,* does not necessarily apply to the more specific rule concerning oral promises to reconvey *arising out of fraudulent transfers.*

In the same sense, the case of *Omohundro* is distinguishable from the case at bar on its facts. *Omohundro* did not involve any type of transfer of property for the purpose of defrauding creditors. In that case, there were no innocent third party creditors to protect; instead, two-thirds of a joint venture sued the remaining one-third to recover their rightful shares in an overriding royalty on land which was part of an area originally sought to be developed under the joint venture. Here, plaintiffs are seeking to enforce an oral promise to reconvey property, which by their own admission, was originally conveyed by them for the express purpose of defrauding creditors.

■ We have been unable to find any case where the rule announced by the Supreme Court in *Omohundro* was applied to limit the specific rule, based upon public policy, against enforcement of a promise to reconvey arising out of a fraudulent transfer. This Court, therefore, will follow the well settled rule by refusing to aid any grantor in seeking a recovery of his property which was conveyed by him for the purpose of defrauding creditors. *Stone v. Parker,* 446 S.W.2d 734 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.).

The judgment of the trial court is AFFIRMED.